

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

April 28, 1950

Honorable W. J. Murray, Jr., Chairman
Railroad Commission of Texas
Austin, Texas

Attention: Honorable Bryan Bell

Opinion No. V-1048

Re: Whether Articles 883,
883(a), and 883(b),
V.C.S., apply to motor
bus companies trans-
porting baggage.

Dear Sir:

The subject of your request for an opinion
relating to applicability of Articles 883, 883(a), and
883(b), V.C.S., to motor bus companies so as to permit
limitation of liability for baggage transported, and
whether these statutes require a bond to be filed with
the Commission, has received careful study.

You present two precise questions:

"1. Do Articles 883, 883(a) and 883(b)
of the Revised Civil Statutes of Texas apply
to motor bus companies?

"2. Do these Articles of the Revised
Civil Statutes of Texas require that this
bond be filed with the Railroad Commission?"

Section 1c of Article 911a, V.C.S., defines
"Motor Bus Company" to mean:

"... every corporation or person ...
engaged in the business of transporting
persons for compensation or hire over the
public highways within the State of Texas.
..."

Section 2 of Article 911a provides that:

"All motor-bus companies, as defined
herein, are hereby declared to be 'common
carriers' ...."

Article 883 reads as follows:

"Railroad companies and other common
carriers of goods, wares and merchandise,
for hire, within this State, on land, or in
boats or vessels on the waters entirely
within this State, shall not limit or re-
strict their liability as it exists at com-
mon law, by any general or special notice,
or by inserting exceptions in the bill of
lading or memorandum given upon the re-
ceipt of the goods for transportation, or
in any other manner whatever.  No special
agreement made in contravention of this
Article shall be valid; provided, however,
that a requirement of notice or claim, con-
sistent with the provisions of Article 5546
of the Revised Civil Statutes of Texas,
1925, as a condition precedent to the en-
forcement of any claim for loss, damage and
delay, or either or any of them, whether
inserted in a bill of lading or other con-
tract or arrangement for carriage, or
otherwise provided, shall be valid and is
not hereby prohibited."

This statute was originally enacted by the
8th Legislature in 1860 as Section 1 of Chapter 44. It
provided:

"... That common carriers of goods,
for hire, within this State, on land or in
boats, or vessels, on the waters entirely
within the body of this State, shall not
limit or restrict their liability, as it
exists at common law, by any general or ac-
tual notice, nor by inserting exceptions
in the bill of lading, or memorandum given
upon the receipt of the goods for trans-
portation, nor in any other manner, <u>except
by special agreement between the carrier
and shipper, reduced to writing and signed</u>

by the parties or their agents." (Emphasis added) Acts 8th Leg., 1860, Ch. 44, p. 38.

In 1863 the 10th Legislature amended Section 1 of the "Act concerning common carriers and defining their liabilities in certain cases," to read:

"... That railroad companies and other common carriers of goods, wares, and merchandise for hire, within this State, on land, or in boats, or vessels, on the waters entirely within the body of this State, shall not limit, or restrict their liability, as it exists at common law, by any general or special notice, nor by inserting exceptions in the bill of Lading, nor memorandum given upon the receipt of the goods for transportation, nor in any other manner, whatever, and no special agreement, made in contravention of the foregoing provisions of this section shall be valid." (Emphasis added) Acts 10th Leg., 1863, Ch. XI, p. 7.

Thus, under the 1860 Act, common carriers of goods for hire could limit or restrict liability as it existed at common law by "special agreement between the carrier and shipper." But the Act of 1863 removed this right and in effect rested liability upon carriers of goods, wares, and merchandise for hire as it exists at common law.

This provision of the Act as written in 1863 was included in the revisions of 1879, 1895, 1911, and 1925, in precisely the form of the 1863 amendment. In 1941, the Legislature again amended this statute (Article 883, V.C.S.) by adding thereto the following language:

"... provided, however, that a requirement of notice or claim, consistent with the provisions of Article 5546 of the Revised Civil Statutes of Texas, 1925, as a condition precedent to the enforcement of any claim for loss, damage and delay, or either or any of them, whether inserted in

a bill of lading or contract or arrangement for carriage, or otherwise provided, shall be valid and is not hereby prohibited." Acts 47th Leg., R.S., 1941, Ch. 500, p. 805.

In 1947, the statute was again amended by adding two new sections which are codified as Arts. 883(a) and 883(b) and read:

"Art. 883(a). Declaration of value; rates based on value; evidence

"No specialized motor carrier or other carrier for hire, including the carriers referred to in said Article 883, shall be required to accept for transportation household goods, personal effects or used office furniture and equipment, unless the shipper or owner thereof or his agent shall first declare in writing the reasonable value thereof. The carrier shall not be liable in damages for an amount in excess of such declared value for the loss, destruction or damage of such property. The Railroad Commission shall establish adequate rates consistent with such declared values to be assessed and collected by such carriers. If the Railroad Commission fails to establish such rates, then in that event such carriers are authorized to collect reasonable transportation charges consistent with the declared value of such property." Acts 50th Leg., 1947, Ch. 327, p. 563.

"Art. 883b. Declaration of value as evidence

"The declaration of value by the shipper shall not be admissible as evidence in any court action unless the carrier at the time of acceptance of such shipment had or provided and maintained in force insurance in a solvent company authorized to do business in Texas, or bonds, in an amount equal to such declared value to protect the owner of such shipment against loss or damage thereto; provided, however, this requirement

as to insurance or bonds shall not apply
to steam or electrical railways." Id.

Article 883 prohibiting common carriers from
limiting or restricting their liability as it exists at
common law applies to baggage transported by common car-
riers, as well as to commodities shipped as freight.
The liability of carriers of baggage entrusted to their
care is that of insurer and is the same as the common
law liability of carriers of goods. Burnet v. Ritter,
276 S.W. 347 (Tex. Civ. App. 1925); 8 Tex. Jur. 916, 923,
924, Carriers, Secs. 665, 674; G.H. & S.A. Ry. v. Fales,
77 S.W. 234 (Tex. Civ. App. 1903, error ref.); 3 Hutchin-
son on Carriers (3rd Ed. 1906), 1478, 1479.

As said in White v. St. Louis Southwestern
Ry., 86 S.W. 962, 965 (Tex. Civ. App. 1905):

"... there is no law in this State fix-
ing specifically the measure of liability
of carriers for the loss of or damage to
baggage. Their duties and liabilities are
the same as at common law, and at common law
a common carrier for hire is an insurer of
the safety of baggage committed to its care
for transportation...."

It is an undoubted rule that statutes in dero-
gation of the common law should be strictly construed,
and we are not persuaded that Articles 883(a) and 883(b)
in any way permit common carriers of persons to limit
or restrict their liability for damage to or loss of
passengers' baggage as it exists at common law. We think
the only purpose of House Bill 297 (Arts. 883(a) and
883(b)) is to permit carriers transporting as freight
"household goods, personal effects or used office furni-
ture and equipment" as a class of commodities to limit
or restrict their liability.

Under the Act "no specialized motor carrier or
other carrier for hire, including the carriers referred
to in Article 883, shall be required to accept for trans-
portation household goods, personal effects or used
furniture and equipment, unless the shipper or owner
thereof or his agent shall first declare in writing the
reasonable value thereof...."

The Legislature has designated household goods, personal effects or used office furniture and equipment a class of commodities for ease in dealing with numerous items similar in character and we think such a classification has a definite, valid objective and purpose.

The 1947 Act provides that carriers shall not be required to accept the class of commodities enumerated therein unless the shipper declares the reasonable value thereof, and Article 6496, V.C.S., defines "shipper" as:

"... any person, firm or corporation tendering freight for shipment, and any consignor or consignee of any bill of lading, or other person, firm or corporation having the right of consignor or consignee."

The 1947 Act further provides that "the Railroad Commission shall establish adequate rates consistent with such declared values to be assessed and collected by such carriers" and if the Commission fails to make such rates the carriers are authorized to collect transportation charges consistent with the declared value. These portions of the statute are persuasive and indicate an objective to include within the statute the class of commodities enumerated when transported as "freight" as distinguished from "baggage."

In 2 Sutherland Statutory Construction (3rd Ed. 1943), 395, it is said:

"... where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."

Household goods as used in wills and tariffs embraces things domestic in nature purchased or acquired for use in and about the house, excluding articles of consumption and of trade. In Re Mitchell's Will, 38 N.Y. Sup.2d 673 (Surr. Ct. 1942).

Baggage is "the trunks, valises, etc., which one carries on a journey...." Webster's New International

Dictionary (2nd Ed. Unabridged, 1938). While baggage transported by motor bus companies as a privilege grant- ed incident to carriage of passengers, consideration for which is furnished by the purchase of a ticket, may be included within the unrestricted definition of "personal effects" it is not included in the restricted meaning of that term ascertained from the preceding words "house- hold goods."

Webster's New International Dictionary (2nd Ed. Unabridged, 1938) defines "personal effects" as "ef- fects of a personal character; esp., as used in wills, tariff laws, etc., such property especially appertain- ing to ones person. The term may be restricted by words of narrower import to things ejusden generis, or where not restricted, as in a residuary legacy, may include all articles not employed in one's business."

As used in wills, "personal effects" is held to mean articles similar in kind to specific articles enumerated. It is a broad expansive term and when not restricted by context embraces everything within the description of personal property, but when used in the expression "household furniture and effects" its meaning is restricted to household goods. The words are not words of art, have no fixed meaning and are to be in- terpreted in accordance with use and may be restricted by application of the rule ejusden generis to a particu- lar class or type of commodities or property specifical- ly mentioned. In Re Lippencott's Estate, 34 Atl. 58, 59 (Pa. Supp. 1896); Child v. Orton, 183 Atl. 709, 710 (N.J. Ct. Chan. 1936); 48 C.J. 1046, Personal, Sec. 6; In Re Michaelson's Estate, 88 N.Y. Sup.2d 59, 60 (Surr. Ct. 1949).

The problem here is to determine the meaning the words "personal effects" had in the legislative vocabulary, and we think the meaning must be ascertained from the preceding words "household goods." Had the Legislature intended the words "personal effects" to be used in their unrestricted sense, it would not have em- ployed the more particular term "household goods." The words "personal effects" must be construed in their or- dinary meaning interpreted from the context of the statute in the light of the purpose sought to be ac- complished by its enactment.

In Popham v. Patterson, 121 Tex. 615, 51 S.W. 2d 680 (1932), the court said:

"In construing statutes it is the duty of the court to ascertain the legislative intent, and, when such intent is once arrived at, it should be given effect; in fact, such intent is the law. In determining the legislative intent, the court should not look alone to any one phrase, clause, or sentence of the Act, but to the entire Act; and this includes the caption, the body of the Act, and the emergency clause...."

Application of this rule makes it clear that the Legislature intended to permit "specialized motor carriers" and other carriers transporting as freight "household goods, personal effects or used office furniture and equipment" as a class of commodities to restrict liability. We find no intention expressed in the 1947 Act or reasonably to be implied from its terms to allow carriers of persons for hire to limit or restrict their liability as it exists at common law for loss of or damage to baggage of passengers transported incident to the carriage of persons.

In answer to your first question, we hold that Articles 883, 883(a) and 883(b) do not apply to motor bus companies. We believe that our answer to your first question appropriately disposes of your second question.

## SUMMARY

Articles 883, 883(a) and 883(b), V.C.S., do not apply to motor bus companies so as to permit limitation or restriction of liability for damage to or loss of baggage of passengers transported as an incident to carriage of persons.

Yours very truly,

APPROVED:

Charles D. Mathews
Executive Assistant

Joe R. Greenhill
First Assistant

EH:db

PRICE DANIEL
Attorney General

By Everett Hutchinson

Everett Hutchinson
Assistant